Barbara SASSEN, Appellant,

v.

The TANGLEGROVE TOWNHOUSE CONDOMINIUM ASSOCIATION and KRJ Management, Inc., Appellees.

No. 06–93–00089–CV.

Court of Appeals of Texas, Texarkana.

Submitted March 17, 1994.

Decided May 31, 1994.

Rehearing Denied May 31, 1994.

Sharon L. Michaels, Houston, for appellant.

Michael W. Cooper, Lueders & Boanerges, Rick S. Butler, Butler, Ewalt & Hailey, Houston, for appellees.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

CORNELIUS, Chief Justice.

Barbara Sassen appeals from the trial court's judgment notwithstanding the verdict in her suit against the Tanglegrove Townhouse Condominium Association and KRJ Management, Inc.

On December 22, 1989, a fire damaged Sassen's condominium. The condominium was located in the Tanglegrove Townhouses in Houston, Texas, and was owned and operated by the Tanglegrove Condominium Association and KRJ Management, Inc. ("the Association"). Sassen was in Florida when the fire occurred, but she returned home on December 23. She testified that a fire restoration company, Blackman Mooring, was on the scene. She went back to Florida the same day, returning to Houston on December 27. On entering her condominium, which had apparently been boarded up by Blackman Mooring, she discovered that the water pipes had frozen and the condominium had flooded. She testified that she and a friend located the water main and turned the water off. She then made arrangements to live elsewhere in Houston while repairs were made.

On January 16, 1990, the Association and its management company, KRJ Management, Inc., employed Texas General Contractors to repair the damaged units. During the weeks following, Sassen became unhappy with the manner and quality of the contractor's work. Among her complaints: some of her personal belongings had been removed from her condominium by the contractor, who left them exposed in her driveway; she wanted the smoke-blackened rafters in her attic replaced, rather than scraped and painted as the contractor intended to do; she had difficulty in getting the contractor to communicate with her; she was unhappy that the contractor was installing a "generic" air conditioner compressor instead of one similar to the brand she had had before the fire; and the condominium was not being restored to the same condition as before the fire.

In the early part of March, Sassen met with Colin Oakley of the Association, Rick Butler, the Association's attorney, and Mike Hickey of Texas General Contractors. She expressed her complaints and asked that the work be stopped and that she be allowed to employ another contractor. She said that Oakley told her that the Association had a contract with Texas General Contractors and the work would continue. After the meeting,

Sassen purchased a no trespassing sign and a padlock, both of which she put on her front door, denying the contractor further access to the condominium.

Sassen filed suit against the Association for breach of fiduciary duty and for wrongfully refusing to allow her to repair the condominium. She pleaded that the Association and the condominium owners are governed by a Condominium Declaration and attached a copy of the declaration to her petition. The Association answered with a general denial and filed a counterclaim for declaratory relief under the Uniform Declaratory Judgments Act, TEX.CIV.PRAC. & REM.CODE ANN. §§ 37.001, et seq. (Vernon 1986 & Supp. 1994), arguing that the Condominium Declaration grants it the exclusive right to repair and reconstruct the property. The Association also subsequently specifically pleaded the Condominium Declaration as governing the rights and duties of the parties and alleged that Sassen was contributorily negligent, had failed to deal in good faith, and did not have standing as a consumer under the Deceptive Trade Practices Act.[1] Sassen added the DTPA claim and claims of breach of contract, fraud, negligence, breach of implied covenant, duty of good faith and fair dealing, and various affirmative defenses to the counterclaim, including waiver, estoppel, failure of consideration, laches, ambiguity, and subsequent oral modification of the Declaration.

The jury's verdict was generally in favor of Sassen. It found that the Association was sixty percent negligent and Sassen was forty percent negligent in causing delay in the condominium's repair; that the Association's conduct relating to the repair was arbitrary, capricious, or discriminatory; that the Association failed to comply with the provisions of the declaration of the Condominium Association; that the Association's failure to comply with the declaration was not excused by Sassen's failure to comply; that Sassen was damaged in the sum of $35,000.00 for costs of repair and $3,000.00 for time and expense; and that reasonable attorney's fees for Sassen were $16,500.00 and $8,000.00 for the Association.

The trial court disregarded the jury's answers finding that the Association failed to comply with the Condominium Declaration, that the failure was not excused, and that the cost to repair the condominium was $35,000.00. It also rendered declaratory judgment declaring that the Association has the exclusive authority to engage, contract with, direct, and control a contractor to complete the necessary repairs and restoration work resulting from the fire and ordering the Association to restore Sassen's property to substantially the same condition that existed before the fire. The trial court did not disregard the jury's finding that the Association acted arbitrarily, capriciously, or discriminatorily. In fact, it expressly provided in the judgment that such finding, among others, was incorporated in the judgment and made a part of it. The judgment further stated:

> The Court has and does disregard the jury's responses to questions 6, 7 and 10(1). The Court in all other respects *accepts the verdict* and enters it as the verdict of the jury.

(Emphasis added.) Nevertheless, the court denied Sassen any recovery under the jury's verdict.

Sassen contends, among other things, that the trial court erred in granting judgment notwithstanding the jury's verdict. We agree and will reverse and render judgment for Sassen on the jury's verdict.

The trial court correctly declared that the Association had the exclusive authority to contract for and conduct the repairs to the condominium. The Association's declaration expressly so provides. In Section 28, it states:

> 28. This Declaration hereby makes mandatory the irrevocable appointment of an attorney-in-fact to deal with the property upon its destruction or obsolescence.
> ... *All of the owners irrevocably constitute and appoint the TANGLEGROVE TOWNHOUSE CONDOMINIUM ASSOCIATION*, a non-profit association, or its successor non-profit corporation, if same be hereafter organized, *their true and lawful attorney* in their name, place, and

---

1. TEX.BUS. & COM.CODE ANN. §§ 17.41, et seq. (Vernon 1987 & Supp.1994).

stead, *for the purpose of dealing with the property upon its destruction* or obsolescence as is hereafter provided. As attorney-in-fact, the Association, by its president and secretary, shall have full and complete authorization, right and power to make, execute and deliver any contract, deed or any other instrument with respect to the interest of a condominium unit owner which are necessary and appropriate to exercise the powers herein granted. *Repair and reconstruction of the improvement(s)* as used in the succeeding subparagraphs *means restoring the improvement(s) to substantially the same conditions in which it existed prior to the damage,* with each unit and the general and limited common elements having the same vertical and horizontal boundaries as before.

The declaration also provided that the Association would be entitled to the insurance proceeds to use for repair and restoration. Sassen, however, alleged that, as her agent for such repairs, the Association violated the terms of its own agency and acted arbitrarily, capriciously, and discriminatorily, i.e., it breached its fiduciary duty.

■ The appointment of an attorney-in-fact creates an agency relationship. An agency creates a fiduciary relationship as a matter of law. *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.,* 823 S.W.2d 591 (Tex.1992); *Locke v. Thigpen,* 353 S.W.2d 249 (Tex.Civ.App.—Houston 1961), *rev'd on other grounds,* 363 S.W.2d 247 (Tex.1963); *Kinzbach Tool Co. v. Corbett–Wallace Corp.,* 138 Tex. 565, 160 S.W.2d 509 (1942); RESTATEMENT (SECOND) OF AGENCY Ch. 13 (1958); 3 TEX.JUR.3D *Agency* § 113 (1980). A fiduciary owes its principal a high duty of good faith, fair dealing, honest performance, and strict accountability. *Kinzbach Tool Co. v. Corbett–Wallace Corp., supra; Burdett v. Miller,* 957 F.2d 1375 (7th Cir.1992); *Crutcher–Rolfs–Cummings, Inc. v. Ballard,* 540 S.W.2d 380 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.); *Starr v. Ripley,* 265 S.W.2d 225 (Tex.Civ.App.—Austin 1954, no writ); RESTATEMENT (SECOND) OF AGENCY Ch. 13 introductory note; 3 TEX.JUR.3D *Agency*

§ 113; 3 AM.JUR.2D *Agency* § 210 (1986). The trial court so instructed the jury.

■ An agent must fulfill its duties with reasonable care, diligence, good faith, and judgment, and if it fails to do so, it will be liable to its principal for the resulting damage. RESTATEMENT (SECOND) OF AGENCY § 401 (1958); 3 TEX.JUR.3D *Agency* §§ 115, 127 (1980); 3 AM.JUR.2D *Agency* § 215 (1986). Even when the exercise of an agent's duties is placed in the agent's absolute discretion, the agent still must use good faith and act reasonably in the discharge of them, or it can be held liable to the principal for the resulting damages. *Compare: Black Lake Pipe Line Co. v. Union Constr. Co.,* 538 S.W.2d 80 (Tex.1976); *Cranetex, Inc. v. Precision Crane & Rigging,* 760 S.W.2d 298 (Tex. App.—Texarkana 1988, writ denied), involving contracts where performance is left to the absolute discretion or satisfaction of a party. It should go without saying, then, that if an agent's conduct is arbitrary, capricious, or discriminatory toward its principal, it is not in good faith, with fair dealing, and with reasonable care, skill, and diligence.

■ A trial court may only disregard a jury finding if there is no evidence to support the finding and may not do so merely because the great weight and preponderance of the evidence is to the contrary. TEX.R.CIV.P. 301; *Alm v. Aluminum Co. of America,* 717 S.W.2d 588, 594 (Tex.1986). In determining whether there was any evidence to support a jury finding, the appeals court views the evidence in the light most favorable to the verdict, considering only the evidence and inferences which support the finding and rejecting all that is contrary. *Campbell v. Northwestern Nat'l Life Ins. Co.,* 573 S.W.2d 496, 497 (Tex.1978).

■ There is some evidence to support the jury's finding that the Association breached its fiduciary duty to Sassen. There is evidence that Sassen told the Association about the unsatisfactory work of the restoration contractor, its mistreatment of her personal belongings, and other matters that were concerning her, yet the Association repeatedly refused to secure another contractor, require the contractor to perform remedial actions or

to adequately perform the repairs. The Association repeatedly refused to allow Sassen to engage a satisfactory contractor, although it had allowed other condominium owners to do so on numerous occasions in the past. The Association refused to inspect the areas where Sassen said the work was deficient, and instead took the word of the contractor against Sassen's word. It never allowed Sassen to have any input as to how the repairs were being completed. The evidence and other evidence in the record is certainly some evidence that the Association, as Sassen's agent, breached its fiduciary duty to look after her interests with the high degree of loyalty, good faith, and reasonable care required of a fiduciary. The jury's finding that the Association acted in an arbitrary, capricious, or discriminatory manner toward its principal, Sassen, is the equivalent of a finding that it breached its fiduciary duty.

After answering that the acts of the Association were arbitrary, capricious, or discriminatory, the jury answered "no" to a following question asking, "Was such conduct a producing cause of damage" to Sassen. Yet, in Question 10 the jury answered that a total of $38,000.00 "would fairly and reasonably compensate Barbara Sassen for her damages, if any, that *resulted from the conduct you have found* in the questions above" (emphasis added). To the extent that the jury found that the Association's arbitrary conduct was not a producing cause of damage, the answer is against the undisputed evidence and should be disregarded. Sassen moved in the trial court to disregard that answer because the contrary was conclusively established. The answer to Question 10 is supported by evidence and should not have been disregarded.

■ An agent's breach of its fiduciary duty, especially when the duty arises out of a written contract of agency, is a breach of contract as well as a tort. *See Hyde Corp. v. Huffines,* 158 Tex. 566, 314 S.W.2d 763 (1958), *cert. denied,* 358 U.S. 898, 79 S.Ct. 223, 3 L.Ed.2d 148 (1958); *InterFirst Bank Dallas, N.A. v. Risser,* 739 S.W.2d 882 (Tex. App.—Texarkana 1987, no writ); *Crutcher–Rolfs–Cummings, Inc. v. Ballard,* 540 S.W.2d 380; RESTATEMENT (SECOND) OF AGENCY §§ 399, 400, 401 cmt. a (1958).

■ Damages for breach of contract should compensate the plaintiff by awarding the value of the expected performance. *P.G. Lake, Inc. v. Sheffield,* 438 S.W.2d 952 (Tex. Civ.App.—Tyler 1969, writ ref'd n.r.e.); 28 TEX.JUR.3D *Damages* § 48 (1983). The jury here found that the delay in effecting the repairs was caused sixty percent by the Association and forty percent by Sassen, but reduction in damages under comparative negligence is applicable to negligence actions only and not to recoveries for breach of contract. TEX.CIV.PRAC. & REM.CODE ANN. §§ 33.001, 33.002 (Vernon Supp.1994).

■ Damages suffered by Sassen resulting from the Association's negligent and arbitrary performance of its duties is the reasonable cost to her to place her condominium in the condition it was in before the fire. The jury found that amount to be $35,000.00. It also found consequential damages to her in the sum of $3,000.00 for her time spent attempting to correct the problems. Thus, Sassen should recover judgment under the jury's verdict for $38,000.00. Her recovery of this amount, however, eliminates the Association's obligation to conduct the restoration resulting from the fire in question and places that obligation on her at her own expense.

As Sassen is a prevailing party in this suit involving the breach of a contract, she is entitled to recover the attorney's fees the jury found in the amount of $16,500.00. TEX. CIV.PRAC. & REM.CODE ANN. § 38.001 (Vernon 1986); *Bernal v. Garrison,* 818 S.W.2d 79 (Tex.App.—Corpus Christi 1991, writ denied).

■ Sassen also contends that the jury's failure to award attorney's fees on appeal is against the great weight and preponderance of the evidence. We do not find this to be against the great weight and preponderance of the evidence. It appears that the jury may have intended to include all reasonable attorney's fees in the award for preparation and trial, and not segregate the fees for work on appeal. If so, the award is reasonable and within the range of the evidence.

It is not necessary that we rule on Sassen's other complaints. For the reasons stated, the judgment of the trial court is reversed and judgment is here rendered that Sassen recover from the Tanglegrove Townhouse Condominium Association $38,000.00 damages, together with attorney's fees of $16,500.00, with interest from date of judgment.

It is so ordered.